**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** and **THE STATE OF MICHIGAN** *ex rel.* **HERSH PATEL, M.D.**, <br><br> Plaintiffs, <br><br> v. <br><br> **INTERVENTIONAL PAIN CENTER PLLC** and **THE PAIN CENTER USA PLLC**, both d/b/a **THE PAIN CENTER USA**; **RAJENDRA BOTHRA, M.D.**; **ERIC N. BACKOS, M.D.**, **JOHN CONFLITTI, D.C.**, **GAINU EDU, M.D.**, **DAVID LEWIS, M.D.**, and **CHRISTOPHER RUSSO, M.D.**, <br><br> Defendants. | **NO. 2:18-cv-12728-DML** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff and *qui tam* Relator Hersh Patel, M.D., by and through his undersigned counsel the JTB Law Group, LLC, alleges of personal knowledge as to his own observations and actions, and on information and belief as to all else, as follows:

**I.
PRELIMINARY STATEMENT**

1.     America is in the grip of an opioid crisis, affecting every corner of every state, and Michigan is no exception. In 2015, Michigan's death rate from unintentional opioid overdose was the 13th highest among the 50 states, with just over 14 deaths per 100,000 people.[1] From 1999 to

---

[1]     "Michigan undercounted opioid overdose deaths in 2015, study suggests," Detroit Free Press, June 28, 2018, available at https://www.freep.com/story/news/2018/06/28/michigan-undercount-opioid-deaths/741659002/ (last accessed Aug. 23, 2018).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

2016, the total number of overdose deaths in the state involving any type of opioid increased more than 17 times over, from 99 to 1,689.[2] According to a 2018 report by the Department of Licensing and Regulatory Affairs and Appriss Health, there were 30 percent more drug-related overdose deaths in 2015 than in 2013. Warren, the city in which Defendants practice, ranked *fourth* among Michigan cities in drug-related overdose deaths in the period 2013-2015.[3] As the Director of the state's Department of Licensing and Regulatory Affairs said this year, "The opioid epidemic is a public health crisis that has affected every community in Michigan."[4]

2.      Both in Michigan and nationwide, this public health crisis is provoked and prolonged by greedy and unscrupulous healthcare providers who exploit and abuse their own legitimate access to these drugs in order to enrich themselves. Among other tactics, providers will tacitly (or sometimes overtly) require that an addicted patient submit to medically unnecessary tests, treatments, and even procedures – for which the provider can then bill – in exchange for continuing to prescribe opioids. In most instances, they also bleed taxpayer funds from Medicare and Medicaid as they immiserate and jeopardize their patients and their communities.

3.      Schemes like these violate not only the Hippocratic Oath; they also violate the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA") and the Michigan Medicaid False Claims Act, Mich. Comp. Laws Serv. §§ 400.601 *et seq.* (the "MMFCA"). And while the Oath may not be enforceable, these two legislative acts of course *are*. Congress and the Michigan Legislature have given private individuals these powerful tools to root out and combat fraud against government programs, including Medicare and Medicaid. And by using these tools to combat fraud, Relator

---

[2]     Michigan Health & Hospital Association, https://www.mha.org/Issues-Advocacy/Opioid-Epidemic (last accessed Aug. 23, 2018).
[3]     https://www.clickondetroit.com/opioids-epidemic/report-details-hardest-hit-michigan-areas-for-opioid-use-drug-overdoses (last accessed Aug. 23, 2018).
[4]     *Id.*

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Hersh Patel, M.D., also helps in the fight against the scourge of opioid addiction.

4.      Relator brings this *qui tam* action on behalf of the United States of America under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, to recover treble the damages sustained by, and civil penalties owed to, the United States as a result of a scheme by Defendants to commit fraud. Defendants have defrauded the United States by seeking and obtaining reimbursement from Medicare and Michigan Medicaid by means of claims that are factually false, legally false, or both.

5.      Relator also brings this action on behalf of the State of Michigan under the Michigan Medicaid False Claims Act, Mich. Comp. Laws Serv. §§ 400.601 *et seq.* (the "MMFCA"), to recover treble the damages sustained by, and civil penalties owed to, Michigan as a result of Defendants' scheme to defraud Michigan Medicaid in the same manner.

6.      Specifically, Defendants seek and obtain from Medicare and from Michigan Medicaid, and conspire to seek and obtain from those entities:

   a.   reimbursement for claims that are induced by illegal kickbacks;

   b.   reimbursements for services, tests, medical equipment and procedures that are not medically necessary or reasonable;

   c.   higher levels of reimbursement than can be justified by the services actually provided ("upcoding"); and

   d.   reimbursement for claims that are factually or legally false in other ways.

7.      As explained below, Defendants are putting their patients at risk in the pursuit of their own profits, at the public expense.

8.      In order to effectuate their fraudulent scheme, Defendants knowingly (a) presented or caused to be presented false claims, (b) made or caused to be made or used false records or statements material to these false claims, and (c) conspired to do these things, causing the United States and Michigan to pay reimbursements that should not have been paid.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

9.      This Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2) and M.C.L. § 400.610a. It will not be served on Defendants unless and until the Court so orders. A copy of the Complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, has been served contemporaneously herewith on the Attorney General of the United States and the United States Attorney for the Eastern District of Michigan, pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d), and on the Attorney General of Michigan, pursuant to M.C.L. § 400.610a.

## II.
## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the federal False Claims Act, 31 U.S.C. § 3729 *et seq*.

11.     The Court has personal jurisdiction over Defendants because Defendants (a) are residents of, and are licensed to transact and do transact business in, this District; and (b) have carried out their fraudulent scheme in this District.

12.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 (b)(2), because Defendants can be found in, are licensed to do business in, and transact or have transacted business in this District, and events and omissions that give rise to these claims have occurred in this District. This District is the locus of the fraud.

13.     The Complaint has been filed within the time period prescribed by 31 U.S.C. § 3731(b) and M.C.L. § 400.614.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

### III.
### NO PUBLIC DISCLOSURE;
### DIRECT AND INDEPENDENT KNOWLEDGE
### OF THE VIOLATIONS ALLEGED HEREIN

14.     There has been no public disclosure, relevant under 31 U.S.C. § 3730(e) or M.C.L. § 400.610a(13), of the allegations or transactions in this Complaint.

15.     Relator makes the allegations in this Complaint based on his own knowledge, experience and observations.

16.     Relator is the original source of the information on which the allegations herein are based, has direct and independent knowledge of such information, and has voluntarily disclosed such information to the United States and Michigan before filing this action.

### IV.
### THE PARTIES

**A.     Plaintiff The United States**

17.     Relator Hersh Patel, M.D., brings this action on behalf of the United States. At all times relevant to this Complaint, the United States, acting through the Centers for Medicare & Medicaid Services ("CMS"), has reimbursed Defendants for the medical services and tests they provided (or purported to provide) to eligible individuals through the Medicare and Michigan Medicaid programs.[5] Thus, the United States brings this action on behalf of its agency CMS and on behalf of Medicare and Michigan Medicaid.

---

[5]     Because Medicaid is jointly funded by both federal and state governments, the United States has a cause of action under the federal False Claims Act for false claims made to state Medicaid programs. *See, e.g., Hays v. Hoffman*, 325 F.3d 982, 988 (8th Cir. 2003) ("When Congress amended the FCA in 1986, it defined 'claim' to include requests for money made to grantees of the federal government. The legislative history explained this was done to clarify that false claims for FCA purposes include claims submitted to state agencies under the Medicaid program and other State, local, or private programs funded in part by the United States where there is significant Federal regulation and involvement.") (internal citation and quotation marks omitted; citing S. Rep. No. 99-345 at 22, 1986 U.S.C.C.A.N. at 5287); *Kane ex rel. United States v. Healthfirst, Inc*., 120 F. Supp. 3d 370, 396 (S.D.N.Y. 2015) ("Congress has repeatedly and specifically provided that claims submitted to Medicaid constitute false claims for the purposes of the FCA.") (citing, *inter alia*, S. Rep. No. 111-10, at 11, 2009 U.S.C.C.A.N. at 438, explaining that the 2009 Fraud

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**B.      Plaintiff The State of Michigan**

18.      Relator also brings this action on behalf of the State of Michigan. At all times relevant to this Complaint, Michigan, acting through the Michigan Department of Health and Human Services (the "MDHHS"), has reimbursed Defendants for the medical services and tests they provided (or purported to provide) to eligible individuals through the Michigan Medicaid program. Thus, Michigan brings this action on behalf of its agency, MDHHS, and on behalf of the Michigan Medicaid program.

**C.      Relator Hersh Patel, M.D.**

19.      Relator Patel also brings this action on his own behalf.

20.      Relator is a citizen of the United States and, at all relevant times, has been a resident of Macomb County, Michigan.

21.      Relator practices medicine through his professional corporation, Hanuman Health, PC, a Michigan licensed LLC.

22.      Relator has been employed by Defendants TPC and IPC as an independent contractor since July 16, 2018, specializing in anesthesiology and pain management. *See* **Exhibit A**, "Independent Contractor Agreement" between The Pain Center and Hanuman Health, PC (Relator's professional corporation).[6] As of the filing of this Complaint he has given notice that he is leaving the position.

---

Enforcement and Recovery Act clarified that "the FCA reaches all false claims submitted to State administered Medicaid programs.").

[6]      Relator's contract is the standard contract given to physicians at The Pain Center, although the amount of base compensation may vary from physician to physician.

## D. Defendants

23.     Defendants are two professional corporations, doing business together as The Pain Center USA; their owner, Dr. Rajendra Bothra; and several physicians working with and for Bothra and his corporations as independent contractors.

24.     Defendant **INTERVENTIONAL PAIN CENTER PLLC ("IPC")** is a domestic professional limited liability corporation with a principal place of business at 27423 Van Dyke Ave., Suite B, Warren, MI 48093. *See* **Exhibit B**, a true and correct copy of the most recent Annual Report and Statement of this Defendant. IPC is an ambulatory surgery center or "ASC," and all interventional procedures except ultrasound guided injections are billed through IPC. The National Provider Identifier ("NPI")[7] 1013385046 is associated with IPC.

25.     Defendant **THE PAIN CENTER USA PLLC ("TPC")** is a separately incorporated domestic professional limited liability corporation with a principal place of business at 27423 Van Dyke Ave., Suite A, Warren, MI 48093. *See* **Exhibit C**, a true and correct copy of the most recent Annual Report and Statement of this Defendant. TPC is a medical clinic, and office visits, urine drug tests ("UDTs"), and injections performed in the clinic are billed through TPC, as well as chiropractic and physical therapy services provided at "the Annex" located at 27253 Van Dyke, and services provided at the clinic at 22480 Kelly Road in Eastpointe. The NPIs 1508996653, 1659683134, and 1891015160 are associated with TPC.

26.     Both companies, though separately incorporated, do business jointly as The Pain

---

[7]     The NPI system "was adopted and became effective May 23, 2007 as the standard unique health identifier for health care providers … . An entity who meets the definition of a 'health care provider' – that is, any provider of medical or other health services, and any other person or organization that furnishes, bills, or is paid for health care in the normal course of business – is eligible to receive a provider ID, or NPI." CMS.gov Unique Identifiers FAQs, *available    at*   https://www.cms.gov/Regulations-and-Guidance/Administrative-Simplification/Unique-Identifier/UniqueIdentifiersFAQs.html (last accessed July 11, 2018).

Center USA. For convenience herein, this joint business will be referred to as "The Pain Center," and reference will be made to IPC and TPC individually as needed.

27.     According to its website, The Pain Center offers "A Multidisciplinary Approach to Pain Management," with "All Services for Chronic Pain under one Roof!"[8]

28.     The overwhelming majority of the patients served by The Pain Center are beneficiaries of Medicare or Michigan Medicaid.

29.     Defendant **RAJENDRA BOTHRA, M.D.**, is a medical doctor licensed to practice in the State of Michigan. On information and belief, Bothra is a citizen of the United States and at all relevant times has been a resident of Oakland County, Michigan.

30.     The NPI 1497839328 is associated with Bothra.

31.     Bothra is the registered agent for and the only member of both IPC and TPC. *See* **Exhibits B** and **C**. On information and belief, Bothra is the sole owner of both corporations.

32.     It is Relator's understanding that all claims for Medicare and/or Michigan Medicaid reimbursement for services performed at The Pain Center are submitted using NPIs associated with Defendants IPC, TPC, or Bothra.[9]

33.     Defendants **ERIC N. BACKOS, M.D.**; **JOHN CONFLITTI, D.C.**; **GAINU EDU, M.D.**; **DAVID LEWIS, M.D.**; and **CHRISTOPHER RUSSO, M.D.** (collectively, the

---

[8]     http://www.thepaincenterusa.com/ (last accessed Aug. 23, 2018).
[9]     *See* **Exhibit A**, § 5 ("… Independent Contractor [i.e., the physician] shall not bill patients or third party payors for services provided under this agreement. *Such billing shall be done under the billing numbers assigned to TPC/IPC of Independent Contractor by the applicable third party payors. … All reimbursement paid for the rendering of professional services by Independent Contractor on behalf of TPC/IPC during the term, of this Agreement shall belong to TPC/IPC.*") (emphasis added). As noted above, Relator's contract is the standard contract given to physicians at The Pain Center, except that base compensation amounts vary from one physician to another.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

"Physician Defendants"), are physicians hired by Defendant Bothra to work at The Pain Center as independent contractors.[10]

## V.
## THE STATUTORY FRAMEWORK

### A.    The Medicare Program

34.    In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare program, to pay for certain healthcare services provided to certain segments of the population. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. *See* 42 U.S.C. §§ 1395 *et seq.*

35.    CMS administers the Medicare program.

36.    Part B of the Medicare program authorizes payment of federal funds for outpatient medical and other health services, including the services at issue here – under the proper circumstances. *See generally* Medicare Benefit Policy Manual (2012), Chapter 15.[11]

37.    Medicare Part B is funded by insurance premiums paid by enrolled Medicare beneficiaries and contributions from the federal treasury. Eligible individuals who are age 65 or older, or disabled, may enroll in Part B to obtain benefits in return for payments of monthly premiums. 42 U.S.C. §§ 1395j, 1395o, 1395r.

38.    42 U.S.C. 1395y(a)(1)(A) provides that "no payment may be made" under Part B "for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body

---

[10]        On information and belief, each of the Physician Defendants has a contract with TPC/IPC substantially similar to Relator's, which is attached hereto as **Exhibit A**. Should it be discovered that these contracts are with professional corporations owned by the Physician Defendants, such corporations are hereby on notice of claims against them, and Relator specifically reserves the right to amend this Complaint to name the professional corporations as additional defendants.

[11]        *Available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/bp102c15.pdf (last accessed July 11, 2018).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

member."

39.     CMS enters into agreements with healthcare providers such as Defendants to establish their eligibility to participate in the Medicare program. Individuals or entities who are participating providers in Medicare, such as Defendants, may seek reimbursement from CMS for services rendered to patients who are program beneficiaries.

40.     During all times relevant herein, to become an authorized participant in Part B of the program, a provider has been required to certify as follows:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier. … I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute …), and on the supplier's compliance with all applicable conditions of participation in Medicare.

CMS Form-855B (07/11),[12] at 31.

41.     To assist in the administration of the Medicare program, CMS contracts with Medicare Administrative Contractors or "MACs."[13] *See* 42 U.S.C. § 1395kk-1.

42.     In order to receive reimbursement from Medicare, providers such as Defendants must submit a claim to the MAC serving their jurisdiction. Claims may be submitted on paper or electronically.

43.     To submit a claim on paper, a provider must use Form CMS-1500.[14] That form requires the provider to make the following certification:

---

[12]     *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/cms855b.pdf (last accessed Aug. 23, 2018).

[13]     A MAC is a private company awarded a contract by HHS to process claims on behalf of Medicare beneficiaries within a certain geographical area. *See* 42 U.S.C. § 1395kk-1. A map of the MAC jurisdictions is available at https://www.cms.gov/Medicare/Medicare-Contracting/Medicare-Administrative-Contractors/Downloads/AB-MAC-Jurisdiction-Map-Oct-2017.pdf (last accessed July 11, 2018). At all relevant times, the Medicare Part B MAC for the jurisdiction that encompasses Michigan has been Wisconsin Physicians Insurance Corporation.

[14]     *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms1500.pdf (last accessed July 11, 2018).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

> In submitting this claim for payment from federal funds, I certify that: 1) the information on this form is true, accurate and complete; … 4) this claim … complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment including, but not limited to the Federal anti-kickback statute …; [and] 5) the services on this form were medically necessary ….

*Id.*, at 2.

44.     A provider may also submit claims electronically. CMS guidance as to electronic claims submission is found in Chapter 24 of the Medicare Claims Processing Manual, CMS Publication No. 100-04 (the "Claims Manual"). Among other things, the guidance specifies the minimum content of the enrollment form that a MAC may use to sign up providers such as Defendants to submit claims electronically. Per the Claims Manual, such an enrollment form must contain, and the enrolling provider must acknowledge, at least the following statements:

> The provider agrees to the following provisions for submitting Medicare claims electronically to CMS or to CMS' A/B MACs or CEDI:
>
> * * *
>
> 7. That it will submit claims that are accurate, complete, and truthful;
>
> * * *
>
> 12. That it will acknowledge that all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program, and that anyone who misrepresents or falsified or causes to be misrepresented or falsified any record or other information relating to that claim that is required pursuant to this agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law; [and]
>
> * * *
>
> 14. That it will research and correct claim discrepancies[.]

Claims Processing Manual, Chapter 24 § 30.2.[15]

45.     The requirement that providers be truthful in submitting claims to Medicare is a precondition for participation as a Medicare provider. *See*, *e.g.*, 42 C.F.R. §§ 1003.105,

---

[15]     *Available        at*        https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/clm104c24.pdf (last accessed July 11, 2018).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

1003.102(a)(1)-(2). Thus, such truthfulness is material to the government's decision to pay and its subsequent payment of claims. In order to be reimbursable by Medicare, services must be medically necessary, must actually be provided, and must be documented in a manner that allows CMS to determine if the services are properly payable.

46.     At all times relevant herein, Defendants have been enrolled Medicare providers. Defendants are eligible to receive reimbursement from CMS for care they provide to patients who are insured through Medicare.

47.     A significant proportion of Defendants' patients are insured through Medicare. Throughout the statutory period, Defendants Bothra and/or The Pain Center made the certifications set forth above or similar certifications when they submitted reimbursement claims to Medicare.

**B.     The Michigan Medicaid Program**

48.     In conjunction with Medicare, Congress enacted Medicaid under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq*.

49.     Medicaid is jointly funded by the federal and state governments to provide health care to certain groups, primarily the poor and the disabled. *See* 42 C.F.R. §§ 430.0 *et seq*.

50.     Outpatient care such as Defendants provide is one of the health benefits funded by Medicaid.

51.     Under the Medicaid program, the federal government pays a specified percentage of each state's Medicaid program expenditures, known as the Federal Medical Assistance Percentage. *See* 42 U.S.C. § 1396d(b).

52.     At all times relevant to this Complaint, the United States has paid the State of Michigan its Federal Medical Assistance Percentage, and the State itself has funded the remainder of its Medicaid expenditures.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

53.     The Michigan Medicaid program is administered by the Michigan Department of Health and Human Services (the "MDHHS"). MDHHS, in turn, contracts with private health insurance companies to provide services to Medicaid beneficiaries. These contractors are referred to as "Medicaid Health Plans" ("MHPs"). Individual providers such as Defendants who are enrolled with the state can decide whether to accept patients from any or all of the MHPs. Current MHP contractors include Aetna Better Health of Michigan; Blue Cross Complete of Michigan; Harbor Health Plan; McLaren Health Plan; Meridian Health Plan of Michigan, Inc.; Molina Healthcare of Michigan; Total Health Care; and UnitedHealthcare Community Plan. On information and belief, Defendants accept all of these MHPs.

54.     In order to enroll as a Medicaid provider, a healthcare entity must agree to abide by the rules, regulations, policies and procedures governing reimbursement, and to keep and allow access to records and information required by Medicaid. In order to receive Medicaid funds, enrolled providers in Michigan, together with authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all policies and procedures applicable to Michigan Medicaid.

55.     At all times relevant herein, all Defendants have been enrolled Michigan Medicaid providers. Defendants are eligible to receive reimbursement for outpatient care they provide to patients who are insured through Michigan Medicaid or an MHP.

56.     In order to receive reimbursement, providers must submit a claim using Form CMS-1500[16] (or its digital equivalent) to the MDHHS or the relevant MHP. By signing a Form CMS-1500, a provider certifies that the services claimed "were medically indicated and necessary to the

---

[16]     *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1500.pdf (last accessed Aug. 5, 2018).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

health of [the] patient and were personally furnished by [the provider or his/her employee] under [his/her] personal direction." *Id.*, at 2.

57.     Form CMS-1500 also requires providers to acknowledge that: "the foregoing information is true accurate and complete. I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws." *Id.*

58.     Moreover, the Michigan Medicaid Provider Manual[17] states:

Providers certify by signature that a claim is true, accurate, and contains no false or erroneous information. The provider's signature or that of the provider's authorized representative may be handwritten, typed, or rubber-stamped on a paper claim.

When a provider's warrant is endorsed or deposited, it is certification that the services billed were actually provided. It further certifies that the claims (paper or electronic) paid by the warrant accurately document that the health care services provided were within the limitation of Medicaid (or compliance with a contract). The warrant's certification applies to original claims as well as resubmitted claims and claim adjustments.

Providers are held responsible for any errors, omissions, or resulting liabilities that may arise from any claim for medical services submitted to MDHHS under the provider's name or NPI number. Contractual arrangements (verbal or written) with employers, employees, contractors, etc. do not release the provider of the responsibility for services billed or signed under the provider's NPI number.

Providers are responsible for the supervision of a subordinate, officer, employee, or contracted billing agent who prepares or submits the provider's claims.

Michigan Medicaid Provider Manual, at 41.

59.     The submission, whether on paper or digitally, of such certifications in connection with a claim for payment from Michigan Medicaid, if false, is a violation of the False Claims Act, 31 U.S.C. § 3729(a), and each such falsely certified claim is a separate violation.

---

[17]     *Available at* https://www.michigan.gov/mdhhs/0,5885,7-339-71551_2945_42542_42543_42546_42553-87572--,00.html (last accessed Aug. 23, 2018).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

60.     The majority of Defendants' patients are insured through Michigan Medicaid. Throughout the statutory period, Defendants Bothra and/or The Pain Center made the certifications set forth above or similar when submitting reimbursement claims to Michigan Medicare.

## C.     The False Claims Act

61.     The False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA"), reflects Congress's objective to "enhance the Government's ability to recover losses as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (1986). As relevant here, the FCA establishes treble damages liability for an individual or entity that:

     a.  "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A);

     b.  "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(l)(B); or

     c.  "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," *id.* § 3729(a)(l)(C).

62.     "Knowing," within the meaning of the FCA, is defined to include reckless disregard and deliberate indifference. 31 U.S.C. § 3729(b).

63.     In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim.[18]

64.     The FCA also provides for payment of a percentage of the government's recovery to a private individual who brings suit on behalf of the government (the "Relator") under the FCA. *See* 31 U.S.C. § 3730(d).

---

[18]     31 U.S.C. § 3729(a)(1) provides a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104-410). The Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note, substituted a different statutory formula for calculating inflation adjustments on an annual basis. On January 29, 2018, the Department of Justice promulgated a Final Rule increasing the penalty for FCA violations occurring after November 2, 2015. For such penalties assessed after January 29, 2018, the minimum penalty is $11,181 and the maximum is $22,363. *See* 28 C.F.R. § 85.5; 83 F.R. 3945 (January 29, 2018).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## D.      The Anti-Kickback Statute

65.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (the "AKS"), prohibits offering, paying, soliciting, or receiving "any remuneration" to induce services for which payment may be made under a federal health care program.

66.     A violation of the AKS is, in turn, a violation of the FCA. *See* 42 U.S.C. § 1320a-7b(g) ("[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]").

## E.      The Michigan Medicaid False Claims Act

67.     The Michigan Medicaid False Claims Act ("MMFCA") is similar to the FCA but covers claims made to the MDHHS, either directly or through an MHP.

68.     As pertinent here, the MMFCA establishes liability for any person who:

   a.   makes or presents, or causes to be made or presented, a claim, including a Medicaid claim, upon the state, knowing the claim to be false; or

   b.   makes or presents, or causes to be made or presented, a claim "that he or she knows falsely represents that the goods or services for which the claim is made were medically necessary in accordance with professionally accepted standards."

*See* M.C.L. § 400.607.

69.     Further, the MMFCA establishes liability for any person who "enter[s] into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false claim." M.C.L. § 400.606.

70.     Further, the MMFCA establishes liability for any person who "solicit[s], offer[s], or receive[s] a kickback or bribe in connection with the furnishing of goods or services for which payment is or may be made under the Medicaid program," or who "make[s] or receive[s] the payment." M.C.L. § 400.604.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

71.     "Knowing" and "knowingly" within the MMFCA mean

that a person is in possession of facts under which he or she is aware or should be
aware of the nature of his or her conduct and that his or her conduct is substantially
certain to cause the payment of a Medicaid benefit. Knowing or knowingly includes
acting in deliberate ignorance of the truth or falsity of facts or acting in reckless
disregard of the truth or falsity of facts. *Proof of specific intent to defraud is not
required*.

M.C.L. § 400.602(f).

72.     The MMFCA further provides that

A person who receives a benefit that the person is not entitled to receive by reason
of fraud or making a fraudulent statement or knowingly concealing a material fact,
or who engages in any conduct prohibited by this statute, shall forfeit and pay to
the state the full amount received, and for each claim a civil penalty of not less than
$5,000.00 or more than $10,000.00 plus triple the amount of damages suffered by
the state as a result of the conduct by the person.

M.C.L. § 400.612(1); *see also id.*, subsection (2) ("A criminal action need not be brought against

the person for that person to be civilly liable under this section.").

73.     The MMFCA also provides for payment of a percentage of Michigan's recovery,

as well as "necessary expenses, costs, [and] reasonable attorney fees," to a private individual who

brings suit on behalf of the state (the "Relator") under the MMFCA. *See* M.C.L. § 400.610a.

## VI.
## DEFENDANTS' FRAUDULENT ACTS

**A.    The Standard Compensation Arrangement
       for Physicians at The Pain Center
       Constitutes an Illegal Kickback**

74.     Defendants' fraud begins the moment a physician signs up to work at The Pain

Center. Physicians are compensated by The Pain Center in a way that creates an illegal kickback,

which in turn makes *all* claims submitted to Medicare or Medicaid for services provided by any

of those physicians fraudulent and legally false under both federal and state law.

75.     The vast majority of services rendered at The Pain Center are rendered to patients

17

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

who are beneficiaries of either Medicare or Michigan Medicaid. A physician's compensation at The Pain Center depends in significant part on the number of these services he performs. Each physician receives base compensation plus percentages of the revenue "related to services personally performed" by that physician, as well as percentages of "the professional component of the fee collected for Interventional Pain Procedures at IPC" and of "all services performed (Medical care, Anesthesia, interventional Procedures or any other) at TPC." *See, e.g.,* **Exhibit A**, "Independent Contractor Agreement" between The Pain Center and Hanuman Health, PC (Relator's professional corporation),[19] § 6.

76.     A compensation arrangement such as this violates the AKS, unless it can be shown to fall within one or more of the exceptions enumerated in 42 CFR §1001.952, for instance the exception for employees. *See id.*, at subsection (i).

77.     Physicians at The Pain Center are classified as independent contractors, not employees. *See id.*, § 2(a) ("In performing his responsibilities under this agreement, Independent Contractor [i.e., Relator] shall not be considered an employee of TPC/IPC and shall, at all times, be deemed and regarded as an independent contractor."). Therefore the employee exception at 42 CFR § 1001.952(i) does not save the compensation arrangement.

78.     No other exception applies to save the compensation arrangement. Therefore, the compensation arrangement for providers at The Pain Center violates the AKS.

79.     A violation of the AKS is a *per se* violation of the FCA, *see* 42 U.S.C. § 1320a-7b(g), and therefore all Medicare and Michigan Medicare reimbursement claims submitted by Defendants The Pain Center and/or Bothra in connection with work performed by their provider-contractors are legally false and fraudulent.

---

[19]     As noted above, Relator's contract is the standard contract given to physicians at The Pain Center.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

80.     The compensation arrangement also violates the anti-conspiracy provision of the MMFCA, which establishes liability for any person who "solicits, offers, or receives a kickback or bribe in connection with the furnishing of goods or services for which payment is or may be made in whole or in part [by Michigan Medicaid]." M.C.L. § 400.604.

81.     Each Defendant knew or had reason to know that The Pain Center's compensation arrangement violated the AKS and the MMFCA upon entering into that arrangement. Each Defendant knowingly entered into the agreement; each Physician Defendant knowingly provided services; and Defendants The Pain Center and/or Bothra knowingly sought and obtained reimbursement from Medicare and Michigan Medicaid for those services.

**B.      Defendants Routinely Seek and Obtain Reimbursement for Services, Tests, Medical Equipment and Procedures that are Not Medically Necessary or Reasonable**

82.     All services rendered at The Pain Center for which reimbursement is sought and obtained from Medicare and Michigan Medicaid are rendered by Defendant Bothra and the physicians with whom TCP/ICP and Bothra contract, including the Physician Defendants.

83.     Both Medicare and Michigan Medicaid will reimburse providers only for services, tests, equipment and procedures that are medically necessary and reasonable.[20] When submitting a claim to either of these agencies, a provider must certify that the services for which reimbursement is claimed were "medically necessary" (for Medicare) or "medically indicated and necessary to the health of [the] patient" (for Medicaid). Form CMS-1500, at 2; *see also* ¶¶ 42-44 and 56-60, *supra*.

84.     Disregarding this requirement, Defendants routinely subject their patients,

---

[20] *See* 42 U.S.C. § 1395y (Medicare); *c.f.* Michigan Medicaid Provider Manual, "General Information for Providers," at 18 ("services or supplies that are not medically necessary" are specifically listed as "*not* covered by the Medicaid program) (emphasis added).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

including their Medicare and Medicaid patients, to unnecessary services, tests and procedures, and force upon them durable medical equipment ("DME"), such as back braces, that the patients neither need nor want. Patients consent to this because they understand that if they did not, Defendants would cut them off from the opioids and other drugs upon which they depend. Thus, Defendants take advantage of their patients' desperation to turn them into cash cows for The Pain Center and themselves.

85.   As examples:

a.   Defendants routinely schedule patients for "facet block" injections[21] where there is no clinical indication, and without evaluating the results of previously performed "diagnostic blocks" that could show whether the injections might or might not help the patients' pain. *See, e.g.*, **Exhibit D** (patient records showing facet injections, with anesthesia, in April and December 2017 in Medicare patient with "no significant abnormality" on June 2009 x-ray and unremarkable MRI in April 2016).

b.   Defendants routinely perform bilateral tests, treatments, and procedures, involving three to four levels of the spine, when treatment of only one side and one or two levels is actually indicated. Also, Defendants routinely schedule the two sides of a bilateral procedure for two different days, in order to maximize billing.[22]

c.   Radiofrequency ablations ("RFAs"),[23] for which reimbursement is particularly lucrative, are routinely performed at approximately six-month intervals, regardless of a patient's need. *See, e.g.*, **Exhibit D** (showing RFAs, with anesthesia, in May 2017, January 2018, and May-June 2018, in Medicare patient with "no significant abnormality" on June 2009 x-ray and unremarkable MRI in April 2016).

---

[21]   Facet joints are small joints at each segment of the spine that provide stability and help guide motion. The facet joints can become painful due to arthritis of the spine, a back injury, or mechanical stress to the back. A "facet block" is an injection of a small amount of local anesthetic and/or steroid to block the pain. This is intended to help a patient better tolerate rehabilitative physical therapy. *See* https://www.spine-health.com/treatment/injections/cervical-thoracic-and-lumbar-facet-joint-injections (last accessed Aug. 24, 2018). The accepted process is for a provider to perform a "diagnostic block" first, to see if such a course of therapy is likely to have the desired effect, before scheduling further injections.

[22]   For instance, the maximum reimbursement allowed for bilateral facet blocks performed on the *same* day is only ¾ of the total reimbursement allowed for two blocks performed on *different* days.

[23]   Radiofrequency ablation is a procedure in which an electrical current produced by a radio wave is used to heat up a small area of nerve tissue, thereby decreasing pain signals from that specific area. The procedure can be used to help patients with chronic back and/or neck pain and pain related to arthritis. Relief varies, depending on the cause and location of the pain, but some patients experience relief lasting six to 12 months and in some cases, relief can last for years. *See* https://www.webmd.com/pain-management/radiofrequency-ablation#1 (last accessed Aug. 24, 2018).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

    d.   Defendants routinely refer patients for chiropractic services and for physical therapy, whether needed or not. *See, e.g.,* **Exhibit E** (records showing Medicare patient receiving physical therapy and chiropractic services throughout September, October, and November 2017 where most recent x-rays (2014) show "essentially unremarkable lumbosacral spine" and "unremarkable cervical spine.").Chiropractic referrals are made to Defendant Conflitti, a chiropractor who works in the Annex at 27253 Van Dyke. Conflitti has his own independent practice, but Defendant Bothra bills directly for the services Conflitti provides at The Pain Center. *See id.*

86.    In another example, Defendants routinely use anesthesia, even for procedures and treatments for which it is not indicated (that is, most of the procedures performed at The Pain Center). *See, e.g.,* **Exhibit E** (Medicare patient receiving anesthesia for facet block injections on May 23, 2018, and for RFAs on June 21 and July 23, 2018, where most recent x-rays (2014) show "essentially unremarkable lumbosacral spine" and "unremarkable cervical spine"). Patients frequently request anesthesia for the "high" they can get (for instance, from fentanyl and benzodiazepine), and Defendants are only too happy to oblige. Many patients then require reversal of the anesthesia's effects with naloxone or flumazenil – creating another opportunity for reimbursement.

87.    Defendants also push DME such as back and knee braces on patients at every eligible visit, whether needed or not. Patients are usually written up for DME by untrained medical assistants[24] prior to being seen by a physician, without regard to actual pain pathology or anything else other than the requirements of their insurance (including Medicare and Michigan Medicaid) – if it's covered, they'll get it. *See, e.g.,* **Exhibit F** (records showing Medicare patient receiving back brace in 2013 where MRI in 2010 shows no significant pathology); **Exhibit D** (Medicare patient receiving back brace in 2016 where 2009 x-ray showed "no significant abnormality" and 2016 MRI was unremarkable); **Exhibit E** (Medicare patient receiving back brace in 2017 where

---

[24]    It is Relator's understanding that as many as half of the individuals serving as "medical assistants" at The Pain Center have no training or credentials whatsoever for that job.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

most recent x-rays (2014) show "essentially unremarkable lumbosacral spine" and "unremarkable

cervical spine").

88.    Defendants also do a booming business in urine drug tests, also called urine drug

screens ("UDTs" or "UDSs"). These tests are a common and legitimately useful tool for guiding

opioid prescribing, but no legal or medical authorities have established bright-line limits on how

often an individual patient should be tested – leaving lots of room for abusive over-testing.[25]

89.    Defendants take advantage of this opening in several ways:

   a.    Where a UDT is indicated, generally accepted practice is to conduct a basic
         qualitative UDT, which is relatively inexpensive, and to follow up with a more
         expensive quantitative UDT – a confirmatory test – only when the first screen is
         positive.[26] However, Defendants routinely conduct both tests, even when the first
         screen is negative. *See, e.g.*, **Exhibit D** (Medicare patient scheduled for "UDS +
         CONF [i.e., confirmatory test]" on same day on four different occasions); **Exhibit
         F** (Medicare patient receiving both tests with no indication that qualitative screen
         was positive).

   b.    Defendants *require* UDTs approximately every three months, rather than on a
         random basis (as many organizations recommend) or once a year (as recommended
         by the Centers for Disease Control for patients receiving prescription opioids). *See,
         e.g.*, **Exhibit E** (Medicare patient subjected to a total of ten UDTs and eight CDTs
         (confirmatory drug tests) in less than two years). Medical assistants will check the
         patient's chart and, if enough time has elapsed since the previous test, collect a
         urine sample even without orders from a physician.[27]

   c.    Defendants have their own in-house laboratory for these tests, meaning they can
         submit claims for both the professional and the technical component of the test,
         making these tests particularly lucrative. Moreover, Defendants use screens that
         unnecessarily test for drugs *in addition to* opioids and illicit drugs, simply because
         such screens are even more lucrative.

---

[25]    *See, e.g.,* A. Guarino, M.D., "Urine Drug Tests in Pain Management: Defrauding Patients, Insurance
Companies and the Government," *available at* https://blog.seakexperts.com/urine-drug-tests-pain-management-
defrauding-patients-insurance-companies-government/ (last accessed Aug. 24, 2018).

[26]    *Id.*

[27]    42 CFR § 410.32(a) states that, in order to be covered by Medicare, "… diagnostic tests must be ordered *by
the physician* who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary
for a specific medical problem and who uses the results in the management of the beneficiary's specific medical
problem." (emphasis added).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

90. Patients at the Pain Center are *required* to accept these services, submit to these tests and procedures, and accept these unneeded DMEs, in order to get the drugs to which they are addicted – and for which Defendants seek and obtain reimbursement from Medicare and Medicaid.

91. The Physician Defendants knowingly provide these unnecessary services and/or order or acquiesce to these unnecessary tests for their Medicare and Medicaid patients so that Defendants The Pain Center and/or Bothra can seek and obtain reimbursement from those programs, and in turn the Physician Defendants can receive the bonuses described *supra*.

**C.   Defendants Routinely Seek and Obtain Reimbursement at Higher Levels Than Can Be Justified ("Upcoding")**

92. For billing purposes, Defendants routinely (and fraudulently) "upcode" many of their services and procedures. For instance:

    a. Defendants routinely code office visits for recurring patients using Current Procedural Terminology ("CPT") code[28] 99213.[29] The expectation for a visit coded 99213 is that the practitioner would spend approximately 15 minutes face-to-face with the patient and/or family.[30] However, physicians at The Pain Center typically spend *no more than two or three minutes* with their patients.[31]

    b. Defendants routinely code procedures[32] as having been performed with ultrasound imaging, when in fact they are not. In many cases, the ultrasound probe (if it is used at all) is randomly placed on the joint to be treated and a random image is taken.

---

[28] To obtain payment from Medicare and Medicaid, providers use codes in the Healthcare Common Procedure Coding System ("HCPCS") to represent the medical procedures claimed for payment. Level I HCPCS codes are identical to CPT codes. All medical procedure codes referenced in this Complaint are Level I HCPCS codes, and are thus interchangeable with CPT codes. *See* 2017 Medicare CPT/HCPCS Codes, *available at* https://www.cms.gov/ Medicare/Health-Plans/MedicareAdvtgSpecRateStats/Risk-Adjustors-Items/CPT-HCPCS.html (last accessed Aug. 24, 2018).

[29] Defendants' records show that during the period Apr. 17, 2017 to Aug. 16, 2018, a total of 35,355 office visits for established patients were conducted at The Pain Center. Of those, almost 91% were coded as 99213.

[30] *See* https://apps.ama-assn.org/CptSearch/user/search/cptSearchSubmit.do?locality=1&keyword=99213 (last accessed Aug. 24, 2018).

[31] The office manager purposely overbooks, and urges physicians to speed up if they fall behind. Physicians are often booked to perform 60 or more procedures in a day.

[32] Procedures include peripheral nerve blocks, small/intermediate/large joint injections, and trigger point injections.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

     c.    Physician assistants at The Pain Center routinely write chart notes under physicians' names, in order to increase reimbursement.

     d.    Defendants provide *group* physical therapy, but seek and obtain reimbursement from Medicare and Michigan Medicaid for one-on-one therapy.

93.    The Physician Defendants knowingly participate in or acquiesce to this upcoding for their Medicare and Medicaid patients so that Defendants The Pain Center and/or Bothra can seek and obtain reimbursement from those programs, and in turn the Physician Defendants can receive the bonuses described *supra*.

**D.    All of These Frauds are Committed at the Direction of, and/or with the Full Knowledge of, Defendant Bothra**

94.    Defendant Bothra is the sole owner of The Pain Center.

95.    In contracts that he signs on behalf of The Pain Center, Defendant Bothra specifies (a) that physicians will be treated as independent contractors for The Pain Center, and (b) that all billing, including claims for reimbursement from Medicare or Michigan Medicaid, for services performed by those physicians be submitted using the NPIs of TPC or IPC, or that of Defendant Bothra.[33]

96.    Bothra carefully monitors the business of The Pain Center. He requires ancillary staff members to report on the number of patients each physician sees, the number of injections performed, UDTs and DME prescribed, etc. Twice in Relator's first two weeks at The Pain Center Bothra told him that he had not made enough accounts receivable, and he has told him on multiple occasions that he needed to see more patients.

97.    Relator has been present when, on multiple occasions, Bothra has discussed the amount of money he makes and the bonuses he gives to the Physician Defendants.

---

[33]    *See* **Exhibit A**.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

98.     Bothra is keenly aware of all claims that go out and all receipts that come in, including claims to and receipts from Medicare and Michigan Medicaid. He receives monthly reports from the billing office. In addition, Bothra personally trains the billing office staff. In short, Bothra is the instigator of all fraudulent activity alleged herein, and is a knowing and willing participant in same.

## VII.
## PATIENT RISK AND HARM

99.     Defendants are not only defrauding the state and federal governments; they are also subjecting their patients to harm and unnecessary risk of harm.

100.    Virtually every medical treatment or procedure carries with it at least some risk, and therefore to subject a patient to an unnecessary procedure is to subject that patient to unnecessary risk. For instance:

    a.  Facet joint steroid injections, even when medically indicated and administered properly, entail some risk of bleeding, infection, and even stroke and paralysis. Yet Defendants administer these injections when *not* indicated, and/or they administer more extensive injections than are indicated by the actual pathology (i.e., injecting more levels than necessary and/or both sides where only one side is indicated).

    b.  It is generally recommended that a patient receive no more than three steroid injections per year, of any sort and in any location on the body, to avoid impairing adrenal function and wound healing. By administering facet joint steroid injections as often as they do – on a *monthly* basis for many patients – Defendants needlessly expose their patients to an elevated risk of iatrogenic adrenal insufficiency and poor wound healing.

    c.  In addition, the practitioners at The Pain Center, including Bothra and the Physician Defendants, often do not have complete medical histories for their patients, because that task is assigned to underqualified or unqualified staff (medical assistants or even secretaries). Consequently, the physicians are unaware that some patients have comorbidities – such as diabetes or compromised immune systems – that make the unnecessary facet joint steroid injections particularly dangerous.

    d.  At the very least, these injections *always* cause local tissue damage – from the steroids, the anesthetic, and the needle itself. Where the injection itself is unnecessary, that damage is unnecessarily inflicted.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

101. Relator is aware of a patient who suffered a stroke at The Pain Center, brought on by a medically unnecessary left cervical RFA.

102. Defendants routinely require patients to submit to chiropractic manipulation/realignment therapy, even though for many patients this only *increases* their pain.

103. Most importantly, Defendants unnecessarily prescribe opioids, and/or unnecessarily extend opioid prescriptions that may have started as legitimate therapy, thereby introducing lethal and addictive medications into the community. Indeed, The Pain Center has become known in the community and beyond as a reliable source of these drugs. Some patients come from hours away because they know Defendants will supply them with what they need. Patients have also been known to sell their pills right outside the clinic doors, and the local police are frequent visitors. Relator is informed that a staff member who was wearing her uniform was approached in a local supermarket by an individual asking about sending "dummy" patients to obtain drugs. And tragically, shortly before Relator joined the staff of The Pain Center, one patient overdosed and died in the clinic bathroom.

104. These are just some of the non-financial costs of Defendants' fraudulent conduct, in addition to the cost to the public fisc. Relator brings this action on behalf of the United States and the State of Michigan to hold Defendants accountable for the financial harm they have caused, but even this will not begin to repair the human damage Defendants have caused for their patients and their communities.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## VIII.
## FIRST CLAIM FOR RELIEF
## <u>FEDERAL FALSE CLAIMS ACT: PRESENTATION OF FALSE CLAIMS</u>

105.    Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

106.    As described above, Defendants' compensation arrangement with the physicians who treated Defendants' patients, including the Physician Defendants, violates the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (the "AKS"), which prohibits offering, paying, soliciting, or receiving "any remuneration" to induce services for which payment may be made under a federal health care program.

107.    The bonus payments made to the Physician Defendants under The Pain Center's compensation arrangement are made by The Pain Center to induce the services performed by those Physician Defendants, some of which in turn were reimbursed by Medicare and Michigan Medicaid.

108.    Therefore, all claims that Defendants presented to Medicare and Michigan Medicaid throughout the statutory period for services provided by those Physician Defendants were the result of illegal kickbacks.

109.    Claims that arise from illegal kickbacks are *per se* false and fraudulent for purposes of the FCA. *See* 42 U.S.C. § 1320a-7b(g) ("[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]").

110.    Therefore, all claims that Defendants presented to Medicare and Michigan Medicaid throughout the statutory period for services provided by the Physician Defendants paid under The Pain Center's compensation arrangement were *per se* false and fraudulent for purposes of the FCA.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

111.    Defendants knew these claims were false and fraudulent, or they recklessly disregarded or were deliberately indifferent to the possibility that they might be so. Accordingly, Defendants knowingly presented false and fraudulent claims to Medicare and Michigan Medicaid for payment in violation of 31 U.S.C. § 3729(a)(l)(A).

112.    The submission by Defendants of these false and fraudulent claims caused the United States, through its agency CMS and that agency's Medicare and Medicaid programs, to pay out sums that it would not have paid if CMS had been made aware of the falsity of Defendants' claims and certifications.

113.    Each false or fraudulent claim submitted to the United States is a separate violation of the FCA.

114.    By reason of the false or fraudulent claims that Defendants knowingly presented, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

**IX.**
**SECOND CLAIM FOR RELIEF**
**FEDERAL FALSE CLAIMS ACT: PRESENTATION OF FALSE CLAIMS**

115.    Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

116.    Throughout the statutory period, Defendants Bothra and/or The Pain Center submitted to Medicare and Michigan Medicaid, and the Physician Defendants caused to be presented to Medicare and Michigan Medicaid, (a) claims for services, tests, medical equipment and procedures that were not medically necessary or reasonable; (b) claims for higher levels of

reimbursement than can be justified by the services actually provided; and (c) claims for services that were not provided as billed.

117.    These claims were factually false, insofar as (a) the services for which reimbursement was claimed were not medically necessary, and/or (b) the claims did not accurately represent the services and treatments that were provided or did not comply with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment.

118.    Moreover, for each claim, Defendants Bothra and/or The Pain Center certified that (a) the services were medically necessary; (b) the claims accurately and completely represented the services and treatments that had been provided; and (c) the claims complied with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment, including the Anti-Kickback Statute.

119.    Each such certification was false; therefore the claims were also legally false.

120.    Defendants knew these claims were factually and legally false, or they recklessly disregarded or were deliberately indifferent to the possibility that they might be false. Accordingly, Defendants knowingly presented false or fraudulent claims to Medicare and Michigan Medicaid for payment in violation of 31 U.S.C. § 3729(a)(l)(A).

121.    The submission by Defendants of these false claims caused the United States, through its agency CMS and that agency's Medicare and Medicaid programs, to pay out sums that it would not have paid if CMS had been made aware of the falsity of Defendants' claims and certifications.

122.    Each false or fraudulent claim submitted to the United States is a separate violation of the FCA.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

123.    By reason of the false or fraudulent claims that Defendants knowingly presented and/or caused to be presented, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

**X.**
**THIRD CLAIM FOR RELIEF**
**FEDERAL FALSE CLAIMS ACT: MAKING OR USING**
**FALSE RECORD OR STATEMENT TO CAUSE FALSE CLAIM TO BE PAID**

124.    Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

125.    As described above, throughout the statutory period, Defendants knowingly made and used, or caused to be made and used, records and statements that reflected (a) services, tests, medical equipment and procedures that were not medically necessary or reasonable; (b) higher levels of service or more expensive procedures than were actually provided; and (c) services that were not actually provided at all. Defendants then knowingly made and used false certifications in claims based on those records and statements.

126.    Accordingly, Defendants knowingly made and used, or caused to be made and used, false records or statements material to false or fraudulent claims to Medicare and Michigan Medicaid for payment, in violation of 31 U.S.C. § 3729(a)(l)(B).

127.    The making and use by Defendants of these false records and statements caused the United States, through its agency CMS and through that agency's Medicare and Medicaid programs, to pay out sums that it would not have paid if CMS had been made aware of the falsity of Defendants' records or statements.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

128.    Each use of a false record or statement material to a false or fraudulent claim to CMS for payment is a separate violation of the FCA.

129.    By reason of the false or fraudulent records or statements that Defendants knowingly created, used, and submitted, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

## XI.
### FOURTH CLAIM FOR RELIEF
### FEDERAL FALSE CLAIMS ACT:
### CONSPIRACY TO GET FALSE CLAIMS PAID

130.    Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

131.    As set forth above, Defendants, including the independent-contractor Physician Defendants, conspired to defraud Medicare and Michigan Medicaid by helping Defendants Bothra and/or The Pain Center in submitting false and fraudulent claims and getting them paid.

132.    Each Defendant knew or had reason to know that the compensation arrangement under which the Physician Defendants were paid was an illegal kickback scheme, and that any and all claims submitted to Medicare and Michigan Medicaid were therefore legally false and fraudulent under the FCA.

133.    Each Defendant knew or had reason to know that Defendant Bothra and/or Defendant The Pain Center were submitting to Medicare and Michigan Medicare (a) claims for services, tests, medical equipment and procedures that were not medically necessary or reasonable; (b) claims for higher levels of reimbursement than could be justified by the services actually provided; and (c) claims for services that were not provided as billed.

134.   These claims were factually false, insofar as (a) the services for which reimbursement was claimed were not medically necessary, and/or (b) the claims did not accurately represent the services and treatments that were provided or did not comply with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment.

135.   Moreover, for each claim, Defendants Bothra and/or The Pain Center certified that (a) the services were medically necessary; (b) the claims accurately and completely represented the services and treatments that had been provided; and (c) the claims complied with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment, including the Anti-Kickback Statute.

136.   Each such certification was false; therefore the claims were also legally false.

137.   Defendants' conspiracy to get these false claims paid is a violation of 31 U.S.C. § 3729(a)(l)(C).

138.   By reason of this conspiracy the United States, through its agency CMS and that agency's Medicare and Medicaid programs, has paid out sums that it would not have paid if CMS had been made aware of Defendants' conspiracy.

139.   The United States has thereby been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding the United States treble damages plus a civil monetary penalty for each violation, and awarding Relator the maximum award permitted under 31 U.S.C. § 3730(d).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## XII.
### FIFTH CLAIM FOR RELIEF
### MICHIGAN MEDICAID FALSE CLAIMS ACT:
### OFFERING AND RECEIVING KICKBACKS IN RETURN FOR SERVICES
### FOR WHICH PAYMENT WAS MADE UNDER THE MEDICAID PROGRAM

140.   Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

141.   As described above, Defendants' compensation arrangement with the Physician Defendants constitutes a kickback scheme for the furnishing of services to The Pain Center's patients, some of which were reimbursed by Michigan Medicaid.

142.   The MMFCA establishes liability for any person who "solicit[s], offer[s], or receive[s] a kickback or bribe in connection with the furnishing of goods or services for which payment is or may be made under the Medicaid program," or who "make[s] or receive[s] the payment." M.C.L. § 400.604.

143.   Relator therefore respectfully requests an order awarding Michigan "the full amount received" by Defendants from Michigan Medicaid during the statutory period, plus a civil penalty for each claim, plus triple the amount of damages suffered by the State, and awarding Relator the maximum award permitted under M.C.L. § 400.610a.

## XIII.
### SIXTH CLAIM FOR RELIEF
### MICHIGAN MEDICAID FALSE CLAIMS ACT:
### PRESENTATION OF FALSE CLAIMS

144.   Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

145.   Throughout the statutory period, Defendants Bothra and/or The Pain Center submitted to Michigan Medicaid (a) claims for services, tests, medical equipment and procedures that were not medically necessary or reasonable; (b) claims for higher levels of reimbursement

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

than can be justified by the services actually provided; and (c) claims for services that were not provided as billed.

146.    These claims were factually false, insofar as (a) the services for which reimbursement was claimed were not medically necessary, and/or (b) the claims did not accurately represent the services and treatments that were provided or did not comply with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment.

147.    Moreover, for each claim, Defendants Bothra and/or The Pain Center certified that (a) the services were medically necessary; (b) the claims accurately and completely represented the services and treatments that had been provided; and (c) the claims complied with all applicable Medicaid laws, regulations, and program instructions for payment.

148.    Each such certification was false; therefore the claims were also legally false.

149.    Defendants knew these claims were factually and legally false, or they recklessly disregarded or were deliberately indifferent to the possibility that they might be false. Accordingly, Defendants knowingly presented false or fraudulent claims to Michigan Medicaid for payment in violation of M.C.L. § 400.607.

150.    The submission by Defendants of these false claims caused the State of Michigan, through its agency MDHHS and that agency's Medicaid program, to pay out sums that it would not have paid if MDHHS had been made aware of the falsity of Defendants' claims and certifications.

151.    Each false or fraudulent claim submitted to Michigan is a separate violation of the MMFCA.

152.    By reason of the false or fraudulent claims that Defendants knowingly presented, Michigan has been damaged, and continues to be damaged, in a substantial amount to be proven

34

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

at trial. Relator therefore respectfully requests an order awarding Michigan "the full amount received" by Defendants from Michigan Medicaid during the statutory period, plus a civil penalty for each false claim, plus triple the amount of damages suffered by the State, and awarding Relator the maximum award permitted under M.C.L. § 400.610a.

## XIV.
## SEVENTH CLAIM FOR RELIEF
## MICHIGAN MEDICAID FALSE CLAIMS ACT:
## CONSPIRACY

153.    Relator repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

154.    The MMFCA establishes liability for any person who "enter[s] into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false claim." M.C.L. § 400.606.

155.    As set forth above, Defendants entered into an agreement, combination, or conspiracy to aid Defendants Bothra and/or The Pain Center to obtain reimbursement for false claims submitted to Michigan Medicaid.

156.    By reason of this conspiracy, Michigan has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relator therefore respectfully requests an order awarding Michigan "the full amount received" by Defendants from Michigan Medicaid during the statutory period, plus a civil penalty for each claim submitted as a result of this conspiracy, plus triple the amount of damages suffered by the State, and awarding Relator the maximum award permitted under M.C.L. § 400.610a.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## XV.
## PRAYER FOR RELIEF

      **WHEREFORE**, Relator respectfully requests that this Court enter judgment in his favor

and that of the United States and Michigan, and against Defendants, granting the following:

A.      On the First, Second, Third and Fourth Claims for Relief (violations of 31 U.S.C. §§ 3729(a)(l)(A), 3729(a)(l)(B), and 3729(a)(l)(C)), an award to the United States for treble its damages, in an amount to be determined at trial, plus the maximum civil penalty allowable for each act committed in violation of the FCA, plus an award to Relator in the maximum amount permitted under 31 U.S.C. § 3730(d);

B.      On the Fifth, Sixth and Seventh Claims for Relief (violation of M.C.L. §§ 400.604, 400.607, and 400.606), an award to Michigan for the full amount received by Defendants as a result of their illegal conduct described herein, to be determined at trial, and for each claim arising from that conduct a civil penalty of not less than $5,000.00 or more than $10,000.00 plus triple the amount of damages suffered by the state as a result of the conduct, plus an award to Relator in the maximum amount permitted under M.C.L. § 400.610a;

C.      And on all Claims for Relief,

    1.      An award to the United States, the State, and Relator each for the reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action;

    2.      An award to the United States, Michigan, and Relator for pre- and post-judgment interest at the rates permitted by law; and

D.      An award of such other and further relief as this Court may deem just and proper.


[this space intentionally left blank]

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## XIV.
## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by jury on all questions of fact raised by the Complaint.

Dated: August 31, 2018

Respectfully submitted,

**JTB LAW GROUP, LLC**

<u>/s/ Jason T. Brown</u>
Jason T. Brown
Patrick S. Almonrode
   (*pro hac vice* application forthcoming)
155 2nd Street, Suite 4
Jersey City, NJ 07302
(877) 561-0000 (office)
(855) 582-5297 (fax)
*jtb@jtblawgroup.com*
*patalmonrode@jtblawgroup.com*

*Attorneys for Relator Hersh Patel, M.D.*

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2018, I caused a true copy of the Complaint in the matter captioned *United States of America and the State of Michigan ex rel. Hersh Patel, M.D. v. Interventional Pain Center PLLC, et al.* to be served upon the following, along with written disclosure of substantially all material evidence and information possessed by Relator:

*by USPS Registered Mail, Return Receipt Requested, to*

Civil Process Clerk
United States Attorney's Office
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, MI 48226

Dave Tanay
Assistant Attorney General,
Office of the Attorney General
of the State of Michigan
2860 Eyde Parkway
East Lansing, MI 48823

*with copy by email to*
*tanayd@michigan.gov*

*and*

Office of the Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Patrick S. Almonrode